# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22288-CIV-GRAHAM/TORRES

WAYNE GRABEIN,
individually, and on behalf of others
similarly situated,

      Plaintiff,

vs.

JUPITERIMAGES CORPORATION
d/b/a/ clipart.com, a foreign corporation
for profit,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; INCORPORATED ORDER ON RELATED MOTIONS

This matter is before the Court on Defendant's Motion for Summary Judgment [D.E. 27], Defendant's Motion for Judicial Notice in Support of its Motion for Summary Judgment [D.E. 29], Defendant's Request for Oral Argument on its Motion for Summary Judgment [D.E. 30], and Defendant's Motion for Protective Order and for Stay of Discovery Pending the Court's Ruling on Defendant's Motion for Summary Judgment or, in the Alternative, Pending the Eleventh Circuit's Ruling in *Grabein v. 1-800-Flowers* [D.E. 31].[1] Having considered the motions, responses, and the pertinent portions of the record, this Court recommends that

_____

[1]      Pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida, these matters were referred by Judge Graham to the undersigned Magistrate Judge to take all necessary and proper action as required by law. [D.E. 34, 36]. A Report and Recommendation is necessary to adjudicate the pending motion for summary judgment, but the remaining motions may be disposed of by Order.

Defendant's Motion for Summary Judgment be **GRANTED**.  The related motions shall also be granted in part and denied in part through this incorporated Order.[2]

## I.   BACKGROUND

At the outset, we note that the parties do not dispute the underlying facts pertinent to Defendant's Motion for Summary Judgment.  The Statement of Material Facts [D.E. 28-1] in support of Defendant's Motion for Summary Judgment properly cites to record evidence.  In the response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Plaintiff does not point to a single genuine issue of material fact. [D.E. 45].  Summary judgment turns not on the facts, but on the legal question of whether 15 U.S.C. § 1681c(g) applies to the undisputed facts in this case.[3]

Waybe Grabein ("Plaintiff"), an independent contractor for a graphics consulting and advertising company, is the sole owner, officer, and director of RGS Media, Inc., a closely-held S corporation.[4]  RGS Media has no employees, no physical location, no phone number, and no website.  The company's address is Plaintiff's home address.  Plaintiff used his personal information to open an account with Washington Mutual, N.A. for RGS Media, and he is solely

---

[2]      If the District Court ultimately adopts our Report and Recommendation to grant summary judgment, the remaining motions would be moot.  However, given the appealable nature of this motion, and the fact that Courts in the Southern District have come to contrary conclusions on the issue addressed in the summary judgment motion, we hereunder analyze and dispose of the referred motions on their merits.

[3]      We note that this motion for summary judgment could have been filed at the outset of litigation as a motion to dismiss.  Indeed the three previous cases in the Southern District of Florida that have addressed the application of § 1681c(g) to e-commerce (which we discuss in more detail below) have adjudicated the issue at the motion to dismiss stage.

[4]      Because we must view all facts in a light most favorable to the non-moving party, this factual background is primarily garnered from Plaintiff's declaration filed in response to Defendant's Motion for Summary Judgment. [D.E. 45-5].

responsible for the account.  Washington Mutual issued Plaintiff a business debit card.  Both Plaintiff's name, and RGS Media, are identified on the debit card.

Jupiterimages ("Defendant") is one of the leading stock photography companies in the world with millions of images offered online.  Clipart.com is the brand name of Defendant's subscription offering for downloadable clipart, photos, vinyl-ready images, web graphics and art, backgrounds, buttons, icons, illustrations, fonts and sounds.

On April 24, 2007, Plaintiff used his business debit card to purchase a one-week membership to Clipart.com.  In accordance with Defendant's business practices, Defendant emailed Plaintiff a receipt confirming the April 24, 2007 purchase.  The receipt included six numbers of Plaintiff's debit card, specifically, the first two digits and the last four digits of the card number.  Plaintiff printed the confirmation email.  Defendant, on the other hand, did not physically print the confirmation email for its own records.

On August 31, 2007, Plaintiff filed a Class Action Complaint against Defendant under the Fair and Accurate Credit Transaction Act ("FACTA").  FACTA is a subset of the statutes contained within the Fair Credit Reporting  Act ("FCRA"), codified at 15 U.S.C. §§ 1681, *et. seq*.  The pertinent section of FACTA provides:

(g) Truncation of credit card and debit card numbers.

> (1) In general.  Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

> (2) Limitation.  This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

> (3) Effective date.  This subsection shall become effective –

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g). Negligent violations of FCRA provisions subject a defendant to liability for actual damages suffered by the consumer as a result of the alleged violation. 15 U.S.C. § 1681o. Willful violations of the FCRA, though, expose a defendant to actual, statutory, and punitive damages. 15 U.S.C. § 1681n(a).

Defendant challenges the application of this statute in this case based on three separate summary judgment arguments. First, Defendant asserts that FACTA does not apply in this case because the debit card used to make the purchase was a business debit card, while FACTA only covers consumer debit card purchases. Second, Defendant posits that the FACTA requirements do not apply to the internet receipt provided to Plaintiff because Defendant did not "print" the receipt. Third, Defendant maintains that it did not print "more than the last 5 digits" because it sent an email receipt showing only the first two and the last four digits of the debit card number. Although Defendant's first and third arguments are unpersuasive, the second argument should carry the day.[5]

---

[5]    Ordinarily, we would first address Defendant's Motion for Judicial Notice in Support of its Motion for Summary Judgment. However, our adjudication of summary judgment does not rely on the facts that Defendant seeks to have judicially noticed. Thus, we turn our immediate attention to the summary judgment motion.

## II.   REPORT AND RECOMMENDATION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c).  In deciding a summary judgment motion, the court must view all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Cruz v. Public Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)).  A material fact is one that might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  Thus, the task is to determine whether, considering the evidence in the light most favorable to the plaintiff, there is evidence on which the trier of fact could reasonably find a verdict in their favor.  *See Anderson,* 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225.

### B.   FACTA Applies to Both Business and Consumer Debit Cards

Defendant first asserts that FACTA does not apply to transactions involving debit cards issued to corporations.  To reiterate, FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).  Section 15 U.S.C. § 1681a offers guidance on

what some of these provisions mean.[6]  "Person" means "any individual, partnership, corporation, trust, estate, cooperative, association, government, or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).  "Debit card" means "any card issued by a financial institution to a *consumer* for use in initiating an electronic fund transfer from the account of the consumer at such financial institution, for the purpose of transferring money between accounts or obtaining money, property, labor, or services."  15 U.S.C. § 1681a(r)(3) (emphasis added).  "Consumer" is defined as "an individual."  15 U.S.C. § 1681a(c).

Applying these definitions to the language of section 1681c, Defendant points out that the statutory definition of "person" consists of both individuals and corporations, whereas "consumer" (used in the definition of debit card) includes only "individuals."  Defendant, citing no authority, concludes that Congress did not intend to include debit cards issued to corporations within the ambit of FACTA transactions.  Thus, Defendant posits, the RGS Media debit card is not a debit card for purposes of FACTA.

Plaintiff's response is threefold: (i) FACTA's truncation requirement is designed to protect "cardholders" like Plaintiff; (ii) we should construe to statute to apply to business debit cards because Defendant's interpretation would lead to an absurd result; (iii) Defendant's own business makes no distinction between individual card holders and entity card holders, thus their statutory interpretation is unreasonable.  We need not explore the merits of all these arguments because a simpler approach is dispositive.

Courts begin the process of legislative interpretation by looking at the plain language of the statutory provision.  *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc).  "In the absence of a statutory term, we look to the common usage of works for their meaning."

---

[6]     "Definitions and rules of construction set forth in this section are applicable for the purposes of this subchapter." 15 U.S.C. § 1681a.

*Consolidated Bank, N.A. v. Office of Comptroller of Currency*, 118 F.3d 1461, 1464 (11th Cir. 1997).  Here, we have a statutory definition for the key term at issue: person. That term is defined a "any individual, partnership, corporation, trust, estate, cooperative, association, government, or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). Clearly, the truncation requirements of section 1681c(g) apply to any "person that accepts credit cards or debit cards for the transaction of business." 15 U.S.C. § 1681a(c).  Defendant is a "person" (a corporation) that accepts debit cards, and thus its actions must comport with section 1681c(g) regulations.

Defendant's contrary argument fails to address why this straightforward reading of the statute is inappropriate based on section 1681c(g), as Defendant is a person (or corporation) that accepts debit cards.  "When the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Id.* at 976.  "[W]e must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed.2d 391 (1992)).  Congress meant for this statute to regulate Defendant's conduct, and said so in a clear, straightforward, sentence.

### C.     *FACTA Does Not Apply to Online Receipts*

Plaintiff alleges in his Complaint that, after using Defendant's clipart.com internet site to make a consumer transaction, Defendant subsequently provided Plaintiff with an electronically transmitted receipt.  Specifically, Plaintiff claims that "Defendant, through clipart.com, provided and/or printed the expiration date and/or provided and/or printed more than the last five (5) digits of Plaintiff's credit card or debit card number on a receipt provided to Plaintiff." *See Class Action Complaint* [D.E. 1 at ¶ 10].  Plaintiff does not contend that he

ever received a paper receipt from Defendant, but nevertheless insists that email confirmation receipts fall within the purview of section 1681c(g).  Plaintiff concludes that section 1681c(g)'s truncation requirement applies broadly to "*any* receipt provided to the cardholder," and thus "*any* receipt" must include online receipts.

Defendant does not take issue with the conclusion that an email purchase confirmation can be a "receipt."  Rather, Defendant contends that online receipts are not "printed" receipts as required under section 1681c(g).  As a result, Defendant argues that summary judgment must be entered in its favor because no printed receipt was provided to Plaintiff in this case.

Plaintiff in opposition relies primarily on this Court's decision another case he filed against a different online merchant, *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV-HUCK (S.D. Fla. Jan. 29, 2008), where Judge Huck determined that the ordinary meaning of the word "print" included the preparation or generation of an online receipt.  Noting that consumer protection statutes should be liberally construed in favor of the consumer, Judge Huck found that the dictionary definition of "print" was broad enough to encompass the information included when a seller transmits an electronic receipt.   In addition, Judge Huck relied on the only other case (at least at that time) confronting the definition of "print" as used in FACTA, *Vasquez-Torres v. Stubhub, Inc.*, 2007 U.S. Dist. LEXIS 63719, *7 (C.D. Cal. July 2, 2007), that similarly found FACTA to apply to e-commerce.

In this Motion for Summary Judgment, Defendant argues that FACTA does not apply to an internet transaction where the merchant does not actually "print" a paper copy of a receipt, but simply transmits the receipt via email.  Defendant urges us to adopt a more recent decision from this District, *King v. MovieTickets.com*, No. 07-22119-CIV-GOLD/TURNOFF (S.D. Fla. Feb. 13, 2008), where Judge Gold concluded that the common meaning of "print" is "something physical and tangible that can be can impressed or marked upon, such as a printed

paper."  Judge Gold looked to the meaning of the word "print" within the context of the entire statute:

> Considering how the word "print" is used in other places in § 1681c(g), it is clear that in the context of subsection (g) and particularly in light of the "cash register or other machine or device" language, the word "print" refers to the act of imprinting something on paper or another tangible surface.  In addition, the term "print" must be construed in light of the use in § 1681c(g) of the word "receipt" and the requirement that such receipts be "provided at the point of sale or transaction."

*Id.* at 10.  Judge Gold acknowledged the contrary rulings in *Grabein* and *Stubhub*, but declined to follow those decisions because neither considered the plain meaning of the word "print" within the context of § 1681c(g) as a whole.[7]

An even later decision from another Judge in the Southern District of Florida reached the same conclusion.  *Haslam v. Federated Department Stores Inc.*, No. 07-61871-CIV-MIDDLEBROOKS/JOHNSON  (S.D. Fla. May 16, 2008).  Concurring with the rationale in *King*, Judge Middlebrooks found that the meaning of "print" in section 1681c(g) was clear and unambiguous, and that section 1681c(g) did not encompass online receipts.  While acknowledging competing dictionary definitions and case law, Judge Middlebrooks found that the vast majority of dictionary definitions of the word "print" required some form of tangible product, such as a paper receipt.

After careful consideration of all the competing arguments, we similarly find that the word "print" applies only to paper receipts provided to a customer at the point of sale.  Consequently, internet receipts are not subject to the FACTA truncation requirements.

As stated above, the starting point for all statutory interpretation is the language of the provision itself.  *Harris*, 216 F.3d at 972.  A court's first task is to determine whether the

---

[7]    Plaintiffs in *King* filed an Amended Complaint, but Judge Gold dismissed the Amended Complaint on May 19, 2008, that time with prejudice, using the same rationale as his original dismissal order.

plain meaning of "print" is apparent.  In light of the fact that the term "print" is not expressly defined in the statute, we look to the common usage of the word for its meaning. *CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001); *Consolidated Bank,* 118 F.3d at 1464.  A court must read the statute using the normal meanings of its words. *Penn v. City of Montgomery, Ala.,* 381 F.3d 1059, 1062 (11th Cir. 2008).  The entire context of the statute should be considered. *Id.* ("We do not look at one word or term in isolation, but instead we look to the entire statutory text.").  In determining common usage, dictionary definitions can also provide guidance.  *CBS, Inc.*, 245 F.3d at 1222 (11th Cir. 2001).

The common meaning of the word "print," as defined by several dictionaries, generally connotes a "printed" item as being something physical and tangible that can be impressed or marked upon, such as a printed paper. "Print" as defined in the online Oxford English Dictionary is "to make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc." Oxford English Dictionary, http://oed.com (last visited July 3, 2008); *see also* Webster's New World Dictionary 1130 (2d College Ed. 1972) (defining print as "1. to mark by pressing or stamping; make a print on or in; 2. to press or stamp (a mark, letter, etc.) on or in a surface"). In the general typography section, the Oxford English Dictionary provides a specific definition of "print" as it relates to computing: "To produce a paper printout of (information stored or accessed on a computer)." Oxford English Dictionary, http://oed.com (last visited July 3, 2008).

Plaintiff asks us to define "print" as "to display on a surface (as a computer screen) for viewing," as evidenced by the following dictionary text:

1a: to impress something in or on. b: to stamp (as a mark) in or on something

2a: to make a copy of by impressing paper against an inked printing surface. b(1): to impress (as wallpaper) with a design or pattern. (2): to impress (a pattern or design) on something. c: to publish in print. d: PRINT OUT; *also*: to display on a surface (as a computer screen) for viewing.

Merriam-Webster Dictionary, http://merriam-webster.com/dictionary (last visited July 3, 2008).

Plaintiff's suggested definition is more than just an alternative definition of the term "print." It is the fourth definition, and it comes with a qualifier: that the particular definition is to be associated with the word "print out;" the verb "print out" is "to make a printout of;" and the noun "printout" is "a printed record produced automatically (as by a computer)." *Id.* Extrapolating Plaintiff's definition supports our position that "print" must involve some sort of tangible "printed record."

Apart from dictionary definitions of statutory language, the Court also has canons of construction at its disposal to explain the meaning of a statute. *CBS, Inc.*, 245 F.3d at 1225. One canon recognized by the Supreme Court is that "[w]here Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Russelo v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed.2d 17 (1983)).  In addition, "where Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000).  Another canon is that a "term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143, 114 S. Ct. 655, 660, 126 L. Ed.2d 615 (1994).

Application of these canons further points to the same conclusion dictated by the plain meaning of the statutory term "print."  We find significant that the statute only applies to receipts "provided to the cardholder at the point of the sale or transaction."  Considered in context, the word "print" must apply to tangible, paper receipts.  There is no tangible "point of sale or transaction" with respect to e-commerce; but the "point of sale or transaction" clause

makes sense in the context of printed paper receipts.  Had Congress sought to include the scenario where online receipts were to be covered by section 1681c, Congress could have included language to that effect.  Congress chose not to do so, and that silence is controlling. *CBS Inc.*, 245 F.3d at 1226.

Therefore, based on the plain language of the statute, the statute's context, and basic principles of statutory construction, an online receipt is not a "printed receipt" for purposes of FACTA's truncation requirement.

Plaintiff also raises numerous arguments with respect to Congressional intent.  A court should only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent. *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (citing *Consolidated Bank, N.A. v. Office of Comptroller of Currency*, 118 F.3d 1461, 1463-64 (11th Cir. 1997)).

As explained above, the first exception to the plain meaning rule does not apply because the statute is not ambiguous.  There is no ambiguity in the word "print."  Plaintiff's primary argument also relies on the fact the statute is not ambiguous, in which case extrinsic materials should not be considered.  To the extent Plaintiff alternatively contends that the statute is in fact ambiguous, the Court finds to the contrary.

With respect to the second exception, courts may reach results inconsistent with the plain meaning of a statute "if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997) ("[S]tatutory language should not be applied literally if doing so would produce an absurd result). Plaintiff raised this principle when arguing that

FACTA must apply to business and consumer debit cards, but did not argue this principle with respect to the inapplicability of section 1681c(g) to email receipts. In any event, this is not a case where the absurd results principle is operative, because we cannot say that the application of the plain meaning of section 1681c(g)'s language produces an absurd result. Congress could well have been concerned with a typical customer at traditional brick and mortar retail store or restaurant tossing the "customer copy" of his credit card receipt in the trash can, and feared that this customer opened himself up to identity theft from an unscrupulous "dumpster diver" who might retrieve the receipt and use it to make unauthorized purchases.

As for the third listed exception, it is merely dicta in *DBB* because the statutory language in that case was found to be ambiguous; anyhow it is contrary to the law of this Circuit. *See CBS Inc.*, 245 F.3d at 1227. The en banc opinion in *Harris*, issued after the decision in *DBB*, states clearly that "[w]hen the import of the words of Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Harris*, 216 F.3d at 976; *CBS Inc.*, 245 F.3d at 1227 ("Such an exception would have serious rule-swallowing potential because it would require that legislative history always be considered in order to determine whether there was clear evidence of contrary legislative intent") (internal quotations and citation omitted). Therefore, we need not and should not conduct a legislative history analysis.[8]

In sum, the word "print" does not encompass on-screen computer displays because "print" only refers to a tangible, paper receipt. That is why Mr. Grabein had to *print* a copy

---

[8]       We note as an aside that our review of that legislative history shows that there is precious little discussion about this particular provision in either floor debates or committee reports that would provide clear guidance one way or the other. Indeed there is no indication in the legislative history that the purpose of the statute included electronic email generated by online commerce.

of his receipt to get it off of his computer; it is why the machine used to transfer text from a computer to paper is called a *printer*; and it is why a judge who asks a law clerk to *print* a case does not intend for the clerk to merely display the case on his computer screen.  For these reasons, the plain language of the statute controls and requires summary judgment in Defendant's favor in this case.

### D.    *FACTA Would Have Applied Had This Been a Printed Receipt*

Although summary judgment is warranted because FACTA does not apply to e-commerce, we address Defendant's final two arguments in support of its summary judgment motion, for the Court to consider in the event that it disagrees with the preceding analysis.

Defendant first argues that it did not violate FACTA's prohibition against printing "more than the last 5 digits" of the card number because "it is undisputed that Jupiterimages only included the last 4, not the last 5 digits, digits of the RGS Media Business Debit Card Number in its confirmatory email notification." 15 U.S.C. § 1681c(g)(1). [D.E. 27 at 14].  Yet Defendant acknowledges that the receipt Jupiterimages issued to Plaintiff contained six total digits of Plaintiff's debit card: the first two and the last four. [D.E. 28-1 at ¶¶ 32-24].  Simply put, Defendant's legal position is irreconcilable with the undisputed facts.

In the alternative, Defendant argues that the term "more than the last 5 digits of the card number" is ambiguous.  "The traditional test for whether a statute or regulation is void on its face is if it is so vague that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *DA Mortgage v. City of Miami Beach*, 486 F.3d 1254, 1271 (11th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).  Defendant must demonstrate that the statute fails to give fair warning of what constitutes a wrongdoing, or that the statute lacks objective enforcement standards.  *DA Mortgage*, 486 F.3d at 1271.  Defendant fails to explain how "persons of

common intelligence" would have to guess at the statute's meaning because section 1681c(g) is not unconstitutionally vague.  The statute prohibits printing more than five digits of a card number, or the expiration date, on a customer's debit card receipt.  Defendant only broached the topic of vagueness to introduce the legislative intent behind FACTA.  But an ambiguity in statutory language must be shown *before* a court delves into legislative history.  *CBS, Inc.*, 245 F.3d at 1224 (citing *United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir. 1998) ("Review of legislative history is unnecessary unless a statute is inescapably ambiguous.") (citation and quotation omitted)).  In any event, we do not find the statute to be "inescapably ambiguous," so we do not need to review the statute's legislative history.

In short, if the statute applies to an electronically distributed online receipt, Defendant's confirmation receipt violated the truncation requirement of the statute.  Defendant would not be entitled to summary judgment.  At best, this last argument could be raised as a defense to Plaintiff's willfulness claim.  But again, the Court recommends that summary judgment be granted on the argument that the statute has no application to online transactions.

### III.   ORDER ON REMAINING PENDING MOTIONS

Again, the remaining pending motions that have been referred for disposition could be denied as moot in light of the above Report and Recommendation.  But in the event that Recommendation is not adopted, the Court will dispose of the pending motions as well.

#### A.   Motion to Take Judicial Notice [D.E. 29]

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court has the discretion to *sua sponte* take judicial

notice of certain facts. Fed. R. Evid. 201(c).  However, a court must take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d).  We also note that judicial notice is only appropriate for "adjudicative" facts. Fed. R. Evid. 201(a).

Defendant requests that the Court take judicial notice of the following "facts": (1) The first several digits of a credit card or debit card number consist of the "Bank Identification Number" or "BIN" for VISA cards or the "Interbank Card Association" or "ICA" for MasterCard; (2) MasterCard ICA's or BIN's start with 5; (3) The complete MasterCard assigned BIN's range from 510000 to 559999; (4) The numbers from 510000 to 559999 consist of six digits; (5) All credit and debit cards issued to businesses show the name of the individual authorized by such businesses to use the card.  We address each request in turn.[9]

### 1.    Fact No. 1

Defendant relies on a printout from the Federal Deposit Insurance Corporation website entitled "Credit Card Activities Manual." [D.E. 29-2 at 2].  In part, this printout somewhat supports Defendant's argument.  Nevertheless, the Court will not take judicial notice of Fact 1 because the this supposed "fact" is not generally known within the territorial jurisdiction of the trial court.  Frankly, even if the Court was intimately familiar with the credit card industry, Defendant failed to sufficiently articulate the particular "fact" that it sought to have judicially noticed because Fact 1 uses the phrase "first several digits of a credit card or debit card."  We cannot tell if "first several digits" includes the first six digits, or the first fifteen.

Furthermore, Defendant did not meet its burden of supplying the Court with the necessary information to warrant judicial notice under Rule 201(d) because the supporting exhibits are of questionable accuracy.  Defendant relies in large part on the affidavit of Myrna

---

[9]     We will identify these requests for judicial notice as "Fact" followed by the particular number (e.g. Fact 2).

V. Hecker, a paralegal for defense counsel.  She apparently conducted internet Google searches for "what do the first 2 digits on a credit card represent" and "what do the first two numbers on a credit care represent," and her affidavit references several print-outs retrieved from the internet as a result of her searches.  According to Defendant, a "sampling of documents obtained from these two searches reveals ... that '5' represents the first digit for MasterCard BIN's and that '51' through '55' are the first two digits of all MasterCard BIN's." [D.E. 29-1 at 2].  Results from a Google search do not meet the standard required as they are not capable of accurate and ready determination. *See Dorner v. Commercial Trade Bureau of California*, No. VIC-F-08-0083 AWI SMS, 2008 WL 1704137, at *4 (E.D. Cal. Apr. 10, 2008) ("Google is continually updating its search system, and results for an identical search can vary from day to day.").  In addition, the accuracy of Defendant's documents is at best questionable, if not wholly unreliable.  For instance, Ms. Hecker's affidavit relies in part on a Wikipedia entry for "credit card numbers," even though Wikipedia is the self-titled "free encyclopedia that anyone can edit."  [D.E. 29-5 at ¶ 13].

The fact that Plaintiff disputes Fact 1 also prohibits the Court from using its discretion to take judicial notice under Rule 201(c). *See, e.g., Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 218 (4th Cir. 1003) (district court abused its discretion by taking judicial notices of facts under Rule 201(c) "[w]ithout establishing these facts as undisputed in the record.").

### 2.    Fact No. 2

Turning to Fact 2, Defendant cites to another printout from the Federal Deposit Insurance Corporation website entitled "Credit Card Securitization Manual." [D.E. 29-3].  That document states in part that "VISA BINs start with 4, and MasterCard ICAs start with 5." *Id.* at 1.  Although this is insufficient information to mandate judicial notice under Rule 201(d),

the Court will nevertheless exercise its discretion and take judicial notice of Fact 2 under Rule 201(c) because Plaintiff does not dispute Defendant's assertion that all MasterCard debit or credit cards begin with the number 5. [D.E. 44 at 2-3, footnote 1].

### 3.   Fact No. 3

Defendant's request for judicial notice of Fact 3 is denied.  Defendant references a document entitled "Excerpts from Security Rules and Procedures (published January 2006)" that was apparently taken from MasterCard's Merchant Rules Manual. [D.E. 29-4].  That document states in pertinent part, "[T]he obligation to obtain and to provide account numbers to MasterCard applies to any account number in the MasterCard assigned BIN range (510000 to 559999)." *Id.*  However, it is unclear how Defendant obtained this document, who authored the document, and whether the document is even up to date.  Judicial notice is not warranted for a fact that is better left to the testimony of a expert witness in banking or credit cards.

### 4.   Fact No. 4

The Court will take judicial notice of Fact 4 because it is beyond dispute that the numbers 510000 to 559999 consist of six digits.  We note that Plaintiff does not object to the Court taking judicial notice on this matter. [D.E. 44 at 4].

### 5.   Fact No. 5

Finally, with respect to Fact 5, Defendant asserts that it is a "commonly known fact that all credit and debit cards issued to businesses show the name of the individual authorized by such businesses to use the card." [D.E. 29-1].  We disagree.  Plaintiff "vigorously disputes" Fact 5:

> Plaintiff disputes that credit cards are "issued to businesses" and that all business credit or debit cards identify an individual and/or the name of the business.  Plaintiff, Wayne Grabein, was issued the debit card used to make the purchase at issue.  How a credit card issuing company determines who to issue a card to or what name(s) are printed on a credit card is not generally known.

> This requires testimony from an expert witness.  It is a technical and disputed issue not appropriate for judicial review.

[D.E. 44 at 4-5].  Rule 201 was designed to obviate the need for formal fact-finding as to undisputed and easily verified facts.  In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite.  *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).  Judicial notice would be inappropriate because Fact 5 is clearly in dispute.

To sum up, it is appropriate to take judicial notice that Mastercard debit and credit cards start with "5."  In addition, we accept as fact that the numbers 510000 to 559999 consist of six digits.

### B. *Motion for Oral Argument [D.E. 30]*

The Request for Oral Argument fails to sufficiently articulate why oral argument is necessary to rule on the summary judgment motion. [D.E. 30].  First, Defendant suggests that its Motion for Summary Judgment raises an issue of first impression, namely the applicability of FACTA to business, as opposed to consumer transaction.  Explained above, we found this argument unconvincing, and oral argument would not convince us otherwise.  Defendant also feels that oral argument would be helpful because there is a split in the Southern District of Florida as to the applicability of FACTA to online receipts (or as Defendant so eloquently puts it, "paperless internet transactions").  However, Defendant fails to explain *how* oral argument would offer any additional insight beyond the motion, response, and reply.  Defendant's Request for Oral Argument is denied.

### C. *Motion for Protective Order and Stay of Discovery [D.E. 31]*

Defendant seeks two separate protective orders and a stay of discovery. [D.E. 31 at 5].  We address these requests separately.

### 1.   *Protective Orders*

Rule 26(c) of the Federal Rules of Civil procedure allows a party from whom discovery is sought to move for an order protecting the party from undue burden or expense upon a showing of good cause.  Fed. R. Civ. P. 26(c).

First, Defendant seeks a protective order that would relieve Defendant of its obligation to respond to Plaintiff's Second Set of Interrogatories and Second Request for Production. *See Discovery Requests* [D.E. 31-2].[1]  However, Defendant does not articulate good cause as to why the Court should grant a protective order.  Defendant argues that "the interrogatory answers and documents sought by [Plaintiff] in his second wave of discovery are directed ... at the issue of willfulness, which is not raised in the pending motion for summary judgment." [D.E. 31 at 4].  But discovery related to the issue of "willfulness" is certainly appropriate given that willful violations of the Fair and Accurate Credit Transaction Act ("FACTA"), a subset of the statutes contained within the Fair Credit Reporting  Act ("FCRA"), expose a defendant to actual, statutory, and punitive damages. 15 U.S.C. § 1681n(a).  Discovery on this matter is especially justified given that Defendant raises as its twenty-second Affirmative Defense: "If Jupiterimages' conduct has resulted in a violation of 15 U.S.C. § 1681c(g), which Jupiterimages specifically denies, any such violation was not willful within the meaning of 15 U.S.C. § 1681n(a)." [D.E. 10 at 7].

Additionally, Defendant seeks a protective order that Third-party National Retail Federation need not respond to Plaintiff's third-party subpoena.  Defendant has no standing to raise such a claim, absent a privilege or some other claim of confidentiality.  In any event,

---

[1]      Notably, Defendant's responses to discovery were due on May 7, 2008, and "the mere filing of a motion for a protective order does not, absent an order of the Court granting the motion, excuse the moving party from complying with the discovery requested." *See* Southern Discovery of Florida Discovery Practices Handbook, Appendix A.6.B.

Plaintiff's Response indicates that National Retail Federal already responded to the subpoena and indicated that it has no responsive documents.  Thus, Defendant's argument is moot.

### 2. *Stay of Discovery*

Defendant seeks a stay pending the Eleventh Circuit's ruling in *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV-HUCK. [D.E. 31 at 5]. The issue on appeal was the application of FACTA requirements to internet transactions.  However, that case was subsequently dismissed in the district court and closed by Order dated June 16, 2008.  The parties in *1-800-Flowers.com, Inc.* filed a joint motion to dismiss the Eleventh Circuit appeal on June 6, 2008.  Plaintiff contends, and we agree, that there is no need to stay this case pending the Eleventh Circuit's ruling in *1-800-Flowers.com* in light of the imminent dismissal.

Defendant also seeks a stay of discovery pending a ruling on its April 30, 2008 Motion for Summary Judgment.  This Report and Recommendation effectively moots Defendant's request.  Moreover, according to Plaintiff, the parties agreed to 30(b)(6) depositions for both Plaintiff and Defendant.  To the extent Defendant's request to stay discovery included depositions, this request is now doubly moot.

### IV. CONCLUSION

Based on the foregoing, it is hereby:

1.      **RECOMMENDED** that Defendant's Motion for Summary Judgment [D.E. 27] be **GRANTED** because FACTA does not apply to online transactions.

2.      Defendant's Motion for Judicial Notice in Support of its Motion for Summary Judgment [D.E. 29] is **GRANTED in PART and DENIED in PART**.  The Court will take judicial notice of the following two facts: (A) MasterCard ICA's or BIN's start with 5; and (B) The numbers from 510000 to 559999 consist of six digits.  The Court will deny Defendant's request to take judicial notice that the first several digits of a credit card or debit card number

consist of the "Bank Identification Number" or "BIN" for VISA cards or the "Interbank Card Association" or "ICA" for MasterCard; that the complete MasterCard assigned BIN's range from 510000 to 559999; or that all credit and debit cards issued to businesses show the name of the individual authorized by such businesses to use the card.

3.    Defendant's Request for Oral Argument on its Motion for Summary Judgment [D.E. 30] is **DENIED.**

4.    Defendant's Motion for Protective Order and for Stay of Discovery Pending the Court's Ruling on Defendant's Motion for Summary Judgment or, in the Alternative, Pending the Eleventh Circuit's Ruling in *Grabein v. 1-800-Flowers* [D.E. 31] is **DENIED**.

5.    Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982)(en banc); 28 U.S.C. § 636(b)(1).  The parties also have ten days to file any objections to the non-dispositive Orders entered simultaneously with the Report and Recommendation.

   **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of July, 2008.

EDWIN G. TORRES
United States Magistrate Judge